BRIGHT, Circuit Judge.
This case presents the question of whether the State of Missouri or the federal bankruptcy court for the Eastern District of Missouri has jurisdiction over grain located in Missouri grain storage warehouses. The bankruptcy court[1] asserts that it has exclusive jurisdiction over the grain warehouses pursuant to a bankruptcy proceeding instituted by Arkansas debtors, operators of warehouses in Missouri and Arkansas. The State of Missouri[2] asserts that the grain should be liquidated in accordance with provisions of the Missouri Code, under the aegis of the Missouri Department of Agriculture.
The State of Missouri applies here for a writ of prohibition[3] to prevent the bankruptcy court from exercising jurisdiction over the grain. The State also appeals *771 from the district court’s[4] denial of its application for a similar writ of prohibition. See In re Cox Cotton Co., 3 C.B.C.2d (Collier’s Bankruptcy Cases) 615 (E.D.Ark.1980).
After carefully reviewing the record and the contentions of the various parties, we sustain the authority of the bankruptcy judge. We hold that the Bankruptcy Reform Act of 1978 (the Code), 11 U.S.C. § 101 et seq. (Supp. Ill 1979), vests the bankruptcy court with exclusive jurisdiction over the grain and grain warehouses in question, subject, of course, to the court’s and trustee’s obligation to protect the interests of farmers and others who have ownership rights in the grain. See 11 U.S.C. § 361. Accordingly, we deny the writ of prohibition and affirm the order of the district court.
I. Background.[5]
Robert James, Don James, and G. E. James (the debtors), residents of Arkansas, operated public grain elevators in Missouri and Arkansas under various partnership identities, including elevators located at Holcomb, New Madrid (Ristine), Caruthers-ville, and Naylor, Missouri. An affiliated corporation, James Agri-Center, Inc., operates a public grain warehouse at Neelyville, Missouri.
On August 11,1980, these debtors, including the corporation, filed bankruptcy proceedings in the bankruptcy court for the Eastern District of Arkansas. The partnership liquidations were originally filed under chapter 7 of the Bankruptcy Code, and subsequently were converted into reorganization proceedings under chapter 11 of the Code. The corporation operates as a debtor in possession under chapter 11 of the Code. The bankruptcy court appointed Robert P. Lindsey initially as the interim trustee on August 15, 1980, and later as permanent trustee for the purpose of operating and liquidating the various partnerships.
Three days prior to the filing of the bankruptcy proceedings, the debtors authorized the Missouri Department of Agriculture to assume control of the grain in their Missouri warehouses, pursuant to Missouri law empowering the State to operate and liquidate insolvent grain warehouses.[6] The Missouri Department of Agriculture filed receivership petitions for the debtors’ grain warehouses in the state circuit courts for the counties in which the warehouses are located. On August 12, 1980, subsequent to the filing of the bankruptcy petitions, the Missouri courts appointed John G. Runyan, then Director of the Department,' as receiver of each warehouse and ordered him to
make an audit and full investigation of the financial circumstances of respondents [debtors] and carry out such operation or liquidation of said public grain warehouse^] in order to protect the best interests of those individuals storing grain in said facilities].
On August 29, the bankruptcy court entered an order directing the trustee to assume certain grain purchase contracts with farmers, executed by the debtors prior to bankruptcy. A number of farmers, believing this action deprived them of their rightful possession of their grain, barricaded the New Madrid (Ristine) grain warehouse. The bankruptcy court ordered United *772 States Marshals to intercede and break the blockade.[7]
On September 3, 1980, the State requested that the bankruptcy court determine the ownership of the grain located in the Missouri partnership warehouses. The State subsequently voluntarily withdrew the request; thus the question of the ownership of the grain remains in dispute. Missouri concedes that the debtors own at least 2.3 percent of the grain. Other parties claiming ownership of the grain include Missouri and Arkansas farmer-producers, the Commodity Credit Corporation, and the First Tennessee Bank, N. A., Memphis. The State and the trustee dispute whether the amount of grain on hand exceeds the outstanding warehouse receipts. The trustee estimates the value of the Missouri grain at approximately $5,000,000.
On September 11, 1980, the bankruptcy court issued an order approving the trustee’s application for a grain dealer and warehouse operator’s license. The court also fixed the trustee’s bond at $1,000,000 and ordered the trustee to comply to the extent possible with Missouri laws and regulations concerning the licensing of grain dealers and warehouses.
The drama escalated when, on September 23,1980, the trustee filed a request in bankruptcy court to sell the grain free and clear of all liens. The trustee alleged that the grain should be sold because of the cost of storage, the high market price, the danger of deterioration, and the financial benefits of investing the proceedings pending eventual distribution. The trustee asserted authority to sell the grain pursuant to 11 U.S.C. § 363(f)(4), which permits the sale of property owned by an entity other than the bankruptcy estate if the ownership is in bona fide dispute.[8] Here, the trustee alleged a genuine dispute between the estate and other parties concerning ownership of the grain.
In response to the petition to sell grain, the Missouri authorities brought an action in Missouri state court against the trustee and the debtors for enforcement of the Missouri grain laws. On October 20, 1980, the state court issued a temporary restraining order, coupled with an order to show cause, directing Missouri’s Director of Agriculture to take possession of the grain *773 warehouses and restraining the trustee from interfering in any way with the Director’s control, operation, and liquidation of the Missouri grain.
Needless to say, the order produced an immediate response from the trustee and the bankruptcy court. On the same day the state order issued, the bankruptcy judge telephoned counsel for Missouri’s Director of Agriculture and advised him that contempt proceedings would be heard against the Director.
The Missouri officials immediately sought a writ of prohibition in this court. We denied that petition on October 21, 1980, without prejudice to the filing of a petition for such a writ in the district court for the Eastern District of Arkansas. We also stayed certain bankruptcy proceedings, including the contempt proceeding, pending a further order of this court. The Missouri officials then unsuccessfully sought prohibitory relief in the federal district court. See In re Cox Cotton Co., 3 C.B.C.2d 615 (E.D.Ark.1980).
The district court ruled that the bankruptcy court possessed exclusive jurisdiction over the estate of the debtors, which included all legal and equitable interests in property of the debtors wherever located as of the commencement of the action. See 11 U.S.C. § 541(a); 28 U.S.C. § 1471(e) (Supp. II 1978). The court also observed that, although state law defines the “interests” in property, federal law controls the issue of whether property, as so defined, becomes property of the debtor’s estate. The court recognized that competing claims against the property existed, and, therefore, the bankruptcy court had jurisdiction at least to determine whether the grain is part of the estate as defined by the Code. In re Cox Cotton Co., supra, 3 C.B.C.2d at 623-24.
Missouri also argued that the legal proceedings brought in state court under the Missouri grain laws, as an exercise of the state’s police and regulatory power, fall within the exception to the automatic stay provision of the Code, 11 U.S.C. § 362(b)(4).[9] The district court rejected this contention, concluding that:
It is plain Petitioners are not endeavoring to prevent a violation of consumer protection, environmental protection, fraud or a similar police or regulatory law involving the safety, health, morals and the general welfare of society, but on the contrary, Petitioners’ sole objective is to protect the pecuniary interests in property of purported depositors. Consequently, Petitioners’ action does not fall within the exception to the jurisdiction of the Bankruptcy Court where a governmental unit is enforcing a police or regulatory power. [In Re Cox Cotton Co., supra, 3 C.B.C.2d at 624.][10]
The State of Missouri appeals from the district court order and renews its motion for a writ of prohibition in this court, contending that
1) the bankruptcy court has no subject matter jurisdiction over the grain located *774 in the debtors’ grain warehouses because under Missouri law that grain was not the property of the warehouse owners;
2) the bankruptcy petitions did not automatically stay the Missouri state court proceedings because those proceedings related to governmental enforcement of its police or regulatory power; and
3) the bankruptcy trustee, under federal law, must comply with Missouri grain laws and, therefore, the bankruptcy court has acted beyond its jurisdiction in authorizing the trustee to perform certain functions without a Missouri license.
We affirm the district court and deny the petition for a writ of prohibition.[11]
II. Discussion.
A. Jurisdiction.
As of the commencement of the bankruptcy actions on August 11, 1980, the bankruptcy court acquired “exclusive jurisdiction of all the property, wherever located, of the debtor[.]” 28 U.S.C. § 1471(e). Section 541 of the Code, 11 U.S.C. § 541, establishes that the filing of the bankruptcy petitions creates an estate and defines which property comprises the estate. As explained in the historical and advisory notes to 11 U.S.C. § 541,
[u]nder paragraph (1) of subsection (a), the estate is comprised of all legal or equitable interest of the debtor in property, wherever located, as of the commencement of the case. * * * The debtor’s interest in property also includes “title” to property, which is an interest, just as are a possessory interest, or leasehold interest, for example. [H.R.Rep.No. 595, 95th Cong., 1st Sess. 367 (1977), reprinted in [1978] U.S.Code Cong. & Ad.News 5963, 6323; S.Rep.No.989, 95th Cong., 2d Sess. 82, reprinted in [1978] U.S.Code Cong. & Ad.News 5787, 5868 (emphasis added).]
To determine whether the bankruptcy court has jurisdiction over the Missouri grain, therefore, we must decide if the debtors’ interest in the Missouri grain falls within section 541’s broad definition of property.
The trustee relies on the debtors’ posses-sory interest as of the commencement of the action to argue that the Missouri grain constitutes property of the estate. The trustee also asserts that the estate holds a lien against the grain for ongoing storage charges and owns outright some of the grain, claiming that commercial documents indicate a sale to the debtors, rather than a bailment between the farmers and the warehouses. The trustee, however, has presented no documents of title to substantiate his claim of ownership. Before the district court, the State conceded that the debtors own 2.3 percent of the grain in dispute.
On the record before us, the debtors’ interest in the Missouri grain consists of possession[12] and a minute ownership interest. In light of the broad definition of property under section 541 of the Code, these interests in the grain are sufficient to trigger preliminary jurisdiction over the property in the bankruptcy court. 4 Collier on Bankruptcy H 541.08[2] (15th ed. 1979); see In re Farmers Grain Exchange, Inc., 1 Bankr.Ct.Dec. 1621 (W.D.Wis.1975). Of course, the bankruptcy court must make the final determination of property interests after full presentation of the evidence.
Although we hold that the bankruptcy court has preliminary jurisdiction over the property, we emphasize that the bankruptcy court must administer the debtors’ limited interest consistent with the ownership rights of holders of documents of title under Missouri law or, in the case of *775 Arkansas grain, under Arkansas law.[13] See In re Clemens, 472 F.2d 939, 942 (6th Cir. 1972); In re Universal Medical Services, Inc., 460 F.2d 524, 526 (3d Cir. 1972); In re Farmers Grain Exchange, Inc., supra, 1 Bankr.Ct.Dec. at 1622.
B. Automatic Stay of State Court Proceedings.
We next examine Missouri’s contention that a writ of prohibition should issue based on the “police or regulatory power” exception to the automatic stay provision of the Bankruptcy Code. Section 362 provides that upon the filing of a bankruptcy petition, all judicial and other proceedings are stayed. This section also lists certain exceptions to the automatic stay, including section 362(b)(4), which provides:
(b) The filing of a petition under section 301, 302, or 303 of this title does not operate as a stay—
$ Ht % $ ¡}c s(s
(4) under subsection (a)(1) of this section, of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit’s police or regulatory power[.]
Missouri asserts that this exception applies to the enforcement of its grain regulatory laws, and, therefore (1) the automatic stay provisions do not bar the Missouri state court proceedings; and (2) the bankruptcy court lacks the power to prevent Missouri from enforcing its grain laws by taking possession of the debtors’ Missouri warehouses. Missouri essentially argues:
[T]he enforcement of grain laws is a valid exercise of a state’s police and regulatory powers. Section 362(b)(4) of the Bankruptcy Code permits enforcement proceedings initiated by state regulatory authorities to continue even though a bankruptcy petition has been filed. The case law is overwhelming that bankruptcy courts do not have subject matter jurisdiction to enjoin enforcement proceedings initiated by state regulatory authorities. The Bankruptcy Court here is attempting to enjoin Missouri’s enforcement of its grain laws. The Bankruptcy Court is powerless to thwart the Circuit Court’s exclusive jurisdiction over such enforcement proceedings. The October 20, 1980 lawsuit now pending in the Circuit Court of New Madrid County should continue. [Appellant’s Brief at 32.]
We reject these contentions.
The present stay provisions amplify and clarify provisions of the former bankruptcy law and bankruptcy rules providing for an automatic stay of certain proceedings against debtors. See, e. g., 11 U.S.C. § 148 (repealed 1978); 11 U.S.C. § 428 (repealed 1978); Rules of Bankruptcy Procedure 401, 601, 10-601, 11-44, 12-43 and 13-401. These automatic stays did not apply generally to proceedings affecting the public health and safety or certain governmental regulatory activity. See In re Shippers Interstate Service, Inc., 618 F.2d 9 (7th Cir. 1980) (labor laws); In re Bel Air Chateau Hospital, Inc., 611 F.2d 1248 (9th Cir. 1979) (labor laws); In re National Hospital and Institutional Builders Co., 9 B.R. 948 (S.D.N.Y.1981) (zoning laws); In re Grand Spaulding Dodge, Inc., 5 B.R. 481 (Bkrtcy. N.D.Ill.1980) (consumer protection laws); In re Canarico Quarries, Inc., 466 F.Supp. 1333 (D.Puerto Rico 1979) (environmental protection laws); In re Colonial Tavern, Inc., 420 F.Supp. 44 (D.Mass.1976) (liquor laws).
In explaining the section 362(b)(4) exception, the Congressional House Report comments:
Paragraph (4) excepts commencement or continuation of actions and proceedings by governmental units to enforce police or regulatory powers. Thus, where a governmental unit is suing a debtor to prevent or stop violation of fraud, environmental protection, consumer protec *776 tion, safety, or similar police or regulatory laws, or attempting to fix damages for violation of such a law, the action or proceeding is not stayed under the automatic stay. Paragraph (5) makes clear that the exception extends to permit an injunction and enforcement of an injunction, and to permit the entry of a money judgment, but does not extend to permit enforcement of a money judgment. Since the assets of the debtor are in the possession and control of the bankruptcy court, and since they constitute a fund out of which all creditors are entitled to share, enforcement by a governmental unit of a money judgment would give it preferential treatment to the detriment of all other creditors. [H.R.Rep.No. 595, 95th Cong., 1st Sess. 343 (1977), reprinted in [1978] U.S.Code Cong. & Ad.News 5963, 6299.]
Additionally, Congressman Don Edwards, Chairman of a subcommittee of the Judiciary Committee considering the Bankruptcy Code, observed:
This section [362(b)(4)] is intended to be given a narrow construction in order to permit governmental units to pursue actions to protect the public health and safety and not to apply to actions by a governmental unit to protect a pecuniary interest in property of the debtor or property of the estate. [124 Cong.Record H 11089, reprinted in [1978] U.S.Code Cong. & Ad.News 6436, 6444-6445.]
In light of the legislative history and court decisions under the earlier bankruptcy act, we believe that the term “police or regulatory power” refers to the enforcement of state laws affecting health, welfare, morals, and safety, but not regulatory laws that directly conflict with the control of the res or property by the bankruptcy court. The pertinent provision of Missouri law relied on by the State, which concerns insolvency of grain warehouses, provides:
If at any time, the director, whether or not he or his authorized agent has possession as authorized by this section, has evidence that a warehouseman is insolvent or is unable to satisfy the claims of all depositors, the director may petition the circuit court for the appointment of a receiver to operate or liquidate the business of the warehouseman in accordance with law. [Mo.Rev.Stat. § 411.519.6 (1979) (emphasis added).]
We conclude that Missouri’s grain laws, although regulatory in nature, primarily relate to the protection of the pecuniary interest in the debtors’ property and not to matters of public safety and health. Missouri’s laws, by governing the operation and liquidation of grain warehouses, directly conflict with the control of the property by the bankruptcy court and, therefore, do not fall within the section 362(b)(4) exception.
Alternatively, even if Missouri’s liquidation proceedings come within the exception, the State’s attempted enforcement of its insolvency laws does not oust the bankruptcy court of jurisdiction.
It is well settled that a bankruptcy action preempts state insolvency proceedings. “The bankruptcy law is paramount, and the jurisdiction of the Federal courts in bankruptcy, when properly invoked, in the administration of the affairs of insolvent persons and corporations, is essentially exclusive.” In re Watts and Sachs, 190 U.S. 1, 27, 23 S.Ct. 718, 724, 47 L.Ed. 933 (1903). Accord, Isaacs v. Hobbs Tie & Timber Co., 282 U.S. 734, 737-38, 51 S.Ct. 270, 271-72, 75 L.Ed. 645 (1931). The bankruptcy court could take appropriate steps to protect its jurisdiction over the estate, regardless of whether a proceeding falls within the section 362(b)(4) exception. For example, the court may “issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.”[14] 11 U.S.C. § 105(a).
*777 Thus, even if the automatic stay provisions did not apply to the Missouri proceedings, the bankruptcy court possesses power in its discretion to enjoin state courts,[15] officials, and agencies from interfering with assets in custody of the bankruptcy court. See In re Shippers Interstate Service, Inc., supra, 618 F.2d at 13; In re Bel Air Chateau Hospital, Inc., supra, 611 F.2d at 1251; In re W. F. Hurley, Inc., 553 F.2d 1096, 1101 (8th Cir. 1977); In re Saugus General Hospital, Inc., 19 C.B.C. 651 (D.Mass.1978) (bankruptcy court may enjoin action by state regulatory agency even when the state action is not automatically stayed by section 362(b)(4)); 2 Collier on Bankruptcy 1105.02 (15th ed. 1979). In other words, the exception of 11 U.S.C. § 362(b)(4), even if applicable in this case, in no way deprives the bankruptcy court of jurisdiction over assets of the bankrupt’s estate, and therefore, section 362(b)(4) cannot serve as a basis for issuing a writ of prohibition.
C. Licensing.
Missouri contends that the trustee intends to operate the Missouri grain warehouses without a state license,[16] in violation of 28 U.S.C. § 959(b) (Supp. II 1978), which provides:
(b) * * * [A] trustee, receiver or manager appointed in any cause pending in any court of the United States, including a debtor in possession, shall manage and operate the property in his possession as such trustee, receiver or manager according to the requirements of the valid laws of the State in which such property is situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof.
We need not, however, decide this issue in the present proceeding. Inasmuch as we hold that the bankruptcy court possesses jurisdiction over the grain and the grain warehouses in Missouri, any complaint by Missouri regarding licensing may be presented to the bankruptcy court. Because this particular challenge does not in any way question the bankruptcy court’s jurisdiction, it provides no basis for issuing a writ of prohibition.[17]
In addition, we note that the bankruptcy court has recognized that the trustee should operate the warehouse in accordance with state law. In its order granting the interim trustee’s application for approval of a grain dealer and warehouse operator’s license, the court found that
there are certain statutory provisions and regulations in existence in the States of Missouri and Arkansas with respect to the lawful operation and licensing of grain warehouses and grain dealers. That the debtor entities have grain warehouses in both states which prior to bankruptcy were regulated by the States of Arkansas and Missouri. The Court further finds that the Interim Trustee should, to the extent possible, comply *778 with said laws and regulations of the States of Arkansas and Missouri dealing with the licensing and regulating of grain warehouses and grain dealers. That applicant, Robert P. Lindsey, Interim Trustee for the above Debtors, is hereby authorized, instructed, and ordered to comply, to the extent possible, with the above State laws and regulations and to acquire whatever licenses or other written authority is required by the regulatory authorities of Arkansas and Missouri as above set forth.
Clearly, by requiring the trustee to obtain state licenses to operate the warehouses, the bankruptcy court has recognized that the trustee must act consistent with the dictates of 28 U.S.C. § 959(b).[18]
III. Pending Motions.
The trustee has asked this court to require the State to post a bond in favor of the bankruptcy court. We deny that motion.
The trustee also has requested this court to authorize him to sell 31,000 bushels of soybeans now located in the MFA elevator at Bernie, Missouri. We also deny this motion and comment thereon.
Assuming, without deciding, that this court possesses the power to grant such a motion under the Code, we conclude that the trustee has not set forth sufficient facts to justify the sale. The Bankruptcy Code provides that the trustee, after notice and hearing, may sell “property of the estate,” other than in the ordinary course of business. 11 U.S.C. § 363(b). Although the grain here in question is “property of the estate” for jurisdictional purposes, its actual ownership has yet to be determined.
The bankruptcy court may authorize the sale of property
free and clear of any interest in such property of an entity other than the estate, only if—
(1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
(2) such entity consents;
(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of such interest;
(4) such interest is in bona fide dispute; or
(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest. [11 U.S.C. § 363(f).]
The trustee has established none of these alternative prerequisites.
We note that a motion to authorize the sale of the Missouri grain is presently pending in the bankruptcy court. In determining whether such a sale should be allowed, that court should carefully consider the requirements of section 363(f) and the duty under the Code to protect the property interests of third parties. The Code provisions make clear that when persons other than the debtor have an interest in the property, adequate protection must be taken “as will result in the realization by such entity of the indubitable equivalent of such entity’s interest in such property.” 11 U.S.C. § 361. The bankruptcy court should particularly examine its authority to order the sale if title documents indicate that the estate possesses no substantial ownership rights to the grain and that any bona fide dispute over the property exists only between third parties.
We leave the resolution of these issues, including the sale of the grain stored at Bernie, Missouri, to the bankruptcy court.
IY. Conclusions.
We deny the application for writ of prohibition and affirm the order of the district court dismissing the application for a writ of prohibition.
*779 We also add a few comments in our supervisory role over bankruptcy courts in this circuit. The district court noted Missouri’s good faith in its efforts to defeat the jurisdiction of the bankruptcy court. We agree, but observe that Missouri officials should have presented the issues raised in the proceeding to the bankruptcy court in the first instance. If dissatisfied with the result, an appeal could have been taken.
We offer the following suggestions to the bankruptcy court:
1) In light of our disposition of the case and the opinion of the district court and this court that the Missouri authorities have proceeded in good faith, the bankruptcy court should consider dismissal of the contempt proceedings.
2) To adequately protect holders of warehouse receipts, particularly Missouri farmers, the bankruptcy court and the trustee may wish to consider the advice of James Boillot, Acting Director of Agriculture for the State of Missouri, either as a party or a proxy or as amicus curiae.
3) The trustee and the bankruptcy court should take steps to expedite the determination of ownership of the Missouri grain, including possible appointment of special masters. See Rules of Bankruptcy Procedure 513.
We have by separate order this date dismissed and discharged any and all stays of proceedings in this action.
Writ denied in No. 80-2198; appeal affirmed in No. 80-2179.

. The bankruptcy judge, the Hon. Charles W. Baker, although named as a party, has elected not to appear in these proceedings. Robert P. Lindsey, bankruptcy trustee, has intervened on behalf of the bankruptcy court in support of the court’s position. Forty-five farmers who claim an interest in grain stored in Arkansas have also intervened on behalf of the trustee.

. The Missouri parties are the State of Missouri; the State of Missouri ex rel. James Boillot, Acting Director of the Missouri Department of Agriculture; John G. Runyan, receiver of certain grain warehouses; and State of Missouri ex rel. Attorney General of the State of Missouri. A group of farmers claiming an interest in grain stored in Missouri has filed an amicus curiae brief on behalf of Missouri.

. A writ of prohibition affords an expeditious and effective means of confining an inferior court to a lawful exercise of its prescribed jurisdiction or compelling a court to exercise its authority. Ex Parte Republic of Peru, 318 U.S. 578, 63 S.Ct. 793, 87 L.Ed. 1014 (1943). In this case, however, the parties delayed consideration of the writ by advising the court of an imminent settlement of the dispute, which the parties failed to achieve.

. The Honorable George Howard, Jr., United States District Judge for the Eastern District of Arkansas.

. We note that no adversary factual record has been made in these proceedings. Our determination rests upon the various pleadings, affidavits, and representations in the briefs.

. The applicable laws are the Missouri Grain Warehouse Law, Mo.Rev.Stat. § 411.010 to § 411.765 (1979 & Supp. 1980), and the Stockyards, Grain and Produce Exchange Law, Grain Dealers Section, Mo.Rev.Stat. § 276.401 to § 276.581 (Supp. 1980). Chapter 411 deals primarily with grain storage transactions and the regulation of grain warehouses. The law requires state licensing of anyone who operates a warehouse, Mo.Rev.Stat. § 411.255; authorizes the Director of the Department of Agriculture to act as receiver to operate or liquidate a warehouse with insufficient inventory, Mo.Rev. Stat. § 411.519; and incorporates article 7 of the Uniform Commercial Code, Mo.Rev.Stat. § 411.020. Chapter 276 deals with the qualifications, licensing, bonding, and regulation of grain dealers.

. Petitioners recite the following version of these events:
About two weeks after the bankruptcy cases were commenced, the bankruptcy trustee obtained an order dated August 27, 1980 from the bankruptcy court authorizing him to operate the business of the partnership Debtors, which included a right on his part to perform grain purchase agreements that the Debtors had made with the farmers and a further right to re-sell the grain he would so purchase to three purchasers pursuant to certain contracts of purchase and sale, involving large quantities of grain; the trustee’s expressed purpose was to reap substantial profits. The trustee’s plan, of course, became known to the public, and the farmer-receiptholders became incensed when, although grain would be leaving the warehouses to enable the trustee to perform these purchase and sale contracts, the farmer-depositors were told that they could not get possession of their grain. Some of the farmer-sellers were even being required to sell additional grain to the trustee who would not release their stored grain to them.
* * * * * *
Because of the intolerable situation created by their inability to get possession of their own property, the farmer-depositors either took possession of, or barricaded others from entering, the New Madrid (Ristine) grain warehouse of which the defendant Lindsey was and is trustee. The bankruptcy trustee responded with an application to the bankruptcy court asserting, with inflammatory charges, that these Missouri farmer-depositors were guilty of unlawful possession, criminal trespass and blockade. The bankruptcy court granted an order dated September 15, 1980, effective as of September 11, 1980, ordering that the United States Marshal for the Eastern District of Arkansas and the United States Marshal for the Eastern District of Missouri remove all persons blockading the facilities and directing that the marshals arrest and bring before the bankruptcy court any persons found to be blockading or barricading the facilities or interfering with the trustee’s “capacity to operate the debtor’s business.” United States Marshals appeared at the premises in force, and the farmers reluctantly went home.

. At the same time the trustee filed 1,4 additional adversary proceedings seeking specific performance of unfulfilled grain contracts in Arkansas and Missouri.

. Section 362, as applicable, provides:
(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title operates as a stay, applicable to all entities, of—
(1) the commencement or continuation, including the issuance of employment of process, of a judicial, administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
******
(3) any act to obtain possession of property of the estate or of property from the estate;
******
(b) The filing of a petition under section 301, 302, or 303 of this title does not operate as a stay—
******
(4) under subsection (a)(1) of this section, of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit’s police or regulatory power[.]

. The district court also found that to the extent Missouri’s Warehouse Grain Act is inconsistent with the provision of the Bankruptcy Code, the law is invalid under the supremacy clause. See Perez v. Campbell, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971).

. We also note that during the pendency of this appeal, certain farmers removed approximately 31,000 bushels of soybeans from the Ristine elevator. This grain has now been redeposited in the Missouri Farmers Association, Inc., storage facility at Bemie, Missouri.

. Since the debtors filed bankruptcy petitions prior to any state court order interfering with the debtors’ right to possession, the debtors, rather than Missouri as receiver, had a posses-sory interest in the grain as of the commencement of the proceedings in bankruptcy.

. As explained by the Attorney General of Missouri, Missouri law provides that fungible goods, such as grain, once commingled, are deemed owned in common by all those entitled to a portion of the goods, which would include holders of warehouse receipts. See Mo.Rev. Stat. §§ 400.7-207 and 400.7-103 (1965).

. According to the historical and revision notes to section 362(b),
[t]he effect of an exception is not to make the action immune from injunction.
The court has ample other powers to stay actions not covered by the automatic stay. Section 105, of proposed title 11*** grants the power to issue orders necessary or appropriate to carry out the provisions of title 11.
*777 The bankruptcy courts are brought within the scope of the All Writs Statute, 28 U.S.C. § 1651 (1970), and are given the powers of a court of law, equity, and admiralty * * *. Stays or injunctions issued under these other sections will not be automatic upon the commencement of the case, but will be granted or issued under the usual rules for the issuance of injunctions. By excepting an act or action from the automatic stay, the bill simply requires that the trustee move the court into action, rather than requiring the stayed party to request relief from the stay. [H.R.Rep. 595, 95th Cong., 1st Sess. 342 (1977) reprinted in [1978] U.S.Code & Cong.News 5963, 6298; S.Rep.No. 989, 95th Cong., 2d Sess. 51, reprinted in [1978] U.S.Code & Cong.News 5787, 5837.]

. This section [§ 105] is also an authorization, as required under 28 U.S.C. 2283, for a court of the United States to stay the action of a State court. As such, Toucey v. New York Life Insurance Company, 314 U.S. 118 (1941), is overruled. [H.R.Rep. 595, 95th Cong., 1st Sess. 317 (1977), reprinted in [1978] U.S.Code & Cong. News 5963, 6274.]

. The trustee asserts that he has been unsuccessful in obtaining a license due to uncooperative state officials. The trustee, of course, may complain to the appropriate forum — the bankruptcy court or state court — concerning any improper refusal to issue a license.

. The State’s complaint concerning the inadequacy of the trustee’s bond should likewise be presented to the bankruptcy court.

. We add that any authorized action by the trustee to liquidate or sell the grain appears to fall within the power of the bankruptcy court to liquidate the debtors’ assets under the Bankruptcy Act. We doubt, therefore, that a trustee must obtain a state license solely for liquidation.